FANNY GELLER AND NATHAN GELLER, PLAINTIFFS, v. ALFONSO RICCUCI AND READING TRANSPORTATION COMPANY, DEFENDANTS.

Decided February 11, 1932.

For the plaintiffs, *Berlin & Berlin.*

For the defendant Alfonso Riccuci, *Reginald V. Spell.*

For the defendant Reading Transportation Co., *William A. Davenport.*

Lyon, C. C. J.  The plaintiff Fanny Geller was injured in an automobile accident, and, with her husband, the other plaintiff, brought suit to recover damages.  The jury brought in a verdict of $7,500 for Mrs. Geller and $2,500 for her husband.

A rule was granted to show cause why the verdict should not be set aside as excessive as to both plaintiffs.

It is claimed for the plaintiff, Mrs. Geller, who was pregnant at the time, that the injury resulted in a miscarriage, and that she sustained other injuries, particularly to her genital organs by reason of which she could never again conceive and bear children.  It is urged if that be the case that the verdict of $7,500 for Mrs. Geller and $2,500 for her husband is not excessive.

If it were clear that the jury were justified in finding from the evidence that such was the case I should not be inclined to disturb the verdict.  But if there was no testimony from which the jury could reasonably infer a permanent injury, then on the authority of several recent cases, the verdict should be held excessive.

In the case of *Powers* v. *Straus,* 157 *Atl. Rep.* 131, a verdict of $4,000 to wife for injuries resulting in severe bruise and miscarriage was held excessive by $2,000. In the case of *Hawkins* v. *Atlantic Coast Trans. Co.,* 157 *Atl. Rep.* 564, a verdict of $2,500 for injury to a woman consisting of contusion of hip, bruise over eye, and sprain of right ankle, resulting in miscarriage, was held excessive to extent of $1,000.

The medical testimony in this case consisted of one hundred and forty-three pages. I have read it carefully and fail to find any testimony which would support the claim that Mrs. Geller was permanently injured so that she can never again conceive and bear children.

There was much testimony that the injury to Mrs. Geller resulted in an atresia of the cervix, by which is meant a contraction or decrease in the size of the mouth of the womb. The jury would doubtless be justified in finding that such a condition did occur, and that so long as it lasted it might interfere with childbirth. Whether or not that is incurable and permanent is quite another question.

Dr. Byck testified (page 40) as follows: *"Q.* As far as the atresia here or narrowing, did you find this atresia so narrow that it would have prevented her from conception? *A.* My answer must be speculation. *Q.* Yes? *A.* There is a possibility of the patient becoming pregnant."

In further answering the question he said: "Atresia may be——of course, the fertility and the fact that she had become pregnant would lead one to believe that there was no atresia previously, but that, of course, is not absolute."

While Dr. Haberman testified (pages 46, 47, 49) that Mrs. Geller had a very severe case of atresia, he also testified (page 50), "that the atresia was due to the inflammation following the miscarriage, which is very common." He further testified (page 63) in answer to the question with regard to the probability of her becoming a mother as follows: "Well, I would say that that is speculative. I am not positive. I haven't examined the patient since the operation * * * and I won't be in a position now to say definitely whether or not she could or could not, but I could say that they some-

times are unable to conceive, but as I say, I won't be in a position, not having examined her."

On page 67 the doctor testified as follows: "*Q*. Doctor, while this atresia is present and this opening, to which you have referred, is closed, and which you call an atresia, is it possible for conception to take place * * * I will say, may conception take place with that atresia there? *A*. With an atresia of this kind that Mrs. Geller *had*, conception could never take place."

A careful reading of this last question and answer does not imply a permanent condition but rather a temporary one.

All of the foregoing testimony was given by physicians called by the plaintiff. Dr. Brothers, a physician called by the defendant, testified (page 138) : "I see no reason why this woman should not become pregnant in the future." "*Q*. And if the atresia of the cervix has been corrected? *A*. Yes. *Q*. Will that remove the only remaining obstacle to pregnancy? *A*. Yes, and many infantile cervices become pregnant without treatment."

From the foregoing testimony I do not think the plaintiff has sustained the burden of proving that Mrs. Geller's condition is permanent.

I think the jury were justified in finding, however, that there were some complications which followed the accident. There was a serious atresia, though not permanent, which "was the result of this miscarriage which was the result of the accident." (Dr. Huberman, page 66.)

In the cases above referred to where the verdicts were held excessive beyond $2,000 and $1,500, respectively, there were little injuries beyond the miscarriage. I cannot think that this case is not more serious than those. I think it is and that a verdict in some greater amount than in those cases would have been justified.

It seems to me, however, that the verdict of $7,500 for Mrs. Geller is excessive by $4,000, and of $2,500 for Mr. Geller is excessive by $1,000. If the parties will agree to those reductions the verdict may stand, otherwise the rule will be made absolute and a new trial granted.